IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

RONALD E. ROLAND,

       Plaintiff,

Vs.

                                                                No. 12-2257-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Ronald E. Roland's ("Roland") application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and his application for supplemental security income ("SSI") benefits under Title XVI of the Act. With the administrative record (Dk. 3) and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1 (Dks. 4, 9, and 12), the case is ripe for review and decision.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant

is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id*. Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**PROCEDURAL HISTORY**

Roland applied for DIB and SSI on April 21, 2009, alleging he became disabled on or about May 10, 2007, due to neck and back pain following an automobile accident. (R. 156, 159). His claims were denied initially and on reconsideration and were heard by the administrative law judge who issued a decision on October 28, 2010, finding that Roland was not disabled from May 10, 2007, through the date of the decision. (R. 21).

Because the Appeals Council denied Roland's request for review, the ALJ's decision is the Commissioner's final decision on review. *Doyal v.*

*Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). The Appeals Council, however, received and listed as additional evidence the medical source statement from Dr. Robert Powers. (R. 6). The Appeals Council summarily concluded that Roland's additional evidence did "not provide a basis for changing the" ALJ's decision. (R. 2). The Appeals Council also "looked at the treatment notes and opinions from S.R. Reddy Katta, M.D. from July 2011 through December 2011" but concluded this new information from Dr. Katta did not relate to the disability period that ended with the ALJ's decision date of October 28, 2010. (R. 2).

**Medical Source Statement of Dr. Robert Powers**

Roland argues the Appeals Council failed to weigh as a treating physician's opinion, Dr. Powers' written opinion as stated in the "Physician's Residual Functional Capacity" form dated July 14, 2011. (R. 469-472). Dr. Powers recorded his assessment of Roland's functional capacity and stated that Roland had "been functioning" at this described level from May 10, 2007. (R. 472). Dr. Powers assessed that in a single eight-hour work day, Roland could sit for a total of three hours, could stand/walk for a total of three hours, and would need to recline for two hours. (R. 469). Dr. Powers concluded that Roland could never bend, squat, stoop, crouch, crawl, kneel, climb and reach. (R. 470). Dr. Powers reported that he believed Roland's complaints of pain and that he regarded them to be supported by the objective findings of "limited

motion" and increased pain with activity. (R. 470). He checked the boxes indicating that Roland's pain and fatigue were "frequently debilitating." (R. 471). Dr. Powers also marked eight boxes as applicable for associated sensory problems and mental problems. (R. 471). He noted that Roland's impairments would likely cause him to be absent from work more than three times a month. *Id*. Dr. Powers also recounted Roland's reported problems with medication side effects. (R. 472). Finally, he cited a CT scan and MRI as the objective medical evidence for the cause of these limitations. (R. 472).

Dr. Powers at Heartland Primary Care saw Roland for neck pain on January 13, 2009. (R. 323). There is evidence that Dr. Powers had seen Roland before this date also. (R. 289, 323). His examination revealed that Roland's neck was tender, and he ordered an MRI and X-rays. *Id*. The X-ray report of January 13, 2009, indicated "disk space narrowing at C3-4, C4-5, and C5-6" levels, and "anterior and posterior osteophytes" at these same levels. (R. 326).[1] "Uncovertebral osteophytes are associated with some neural foraminal narrowing on both the right and left." *Id*. The radiologist's impression was that "the disk degenerative disease with spondylosis increases the likelihood of a posttraumatic radiculopathy." *Id*. The MRI of January 26, 2009, confirmed "mild/moderate degenerative disc disease with greatest

---

[1] A cervical spine X-ray in August of 2007 showed: "moderate disk space narrowing at C3-4,C4-5 and C5-6 with anterior and posterior marginal spurring" and "moderate scattered degenerative changes involving the facet joints particularly in the lower cervical spine." (R. 318).

6

involvement C2-C3 through C4-C-5 levels." (R. 329). The physician's impression was: "multilevel degenerative disc disease with facet and uncovertebral joint hypertrophy," "moderate right and mild left neuroforaminal stenosis" at C3-C4," and "mild bilateral neuroforaminal stenosis at C4-C5 and C5-C6. (R. 329). Based on these results, Dr. Powers referred Roland for a neurosurgical consultation in March of 2009 by Dr. Paul Arnold at KU Hospital. Dr. Arnold opined that he did "not believe surgical therapy is indicated" and then discussed with Roland his therapeutic options. (R. 332). Dr. Arnold then prescribed a course of physical therapy for Roland. *Id*. The record does not affirmatively show that Roland was seen or treated by Dr. Powers or by his referrals again until the summer of 2011 when Dr. Powers apparently completed the medical source statement and also referred Roland to Dr. Katta. (R. 489).

The written decisions of the ALJ and the Appeals Council make no mention of Dr. Powers by name or of his treatment by referrals. Roland specifically argues that the Appeals Council failed to consider the relevant statutory factors in evaluating Dr. Powers' opinion expressed in the medical source statement and failed to identify what weight was given his opinion. Characterizing Dr. Powers as his treating physician, Roland contends the Appeals Council's handling of Dr. Powers' medical source statement does not accord with the circuit case law, applicable regulations or the pertinent Social

7

Security rulings used for evaluating the medical opinions of a claimant's treating physician. *See Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003). The Commissioner argues on appeal that Dr. Powers is not a treating physician and his opinion is not entitled to controlling weight. The Commissioner's brief then offers an analysis of the relevant factors for weighing Dr. Powers' opinion. Because none of this analysis or discussion is found in the Appeals Council's decision, Roland replies that the Commissioner is trying a "post hoc rationalization on behalf of the Appeals Council" that is precluded by Tenth Circuit law. (Dk. 12, p. 8, citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The ALJ's decision should have been evaluated based solely on the reasons stated in the decision.")).

As discussed above, the Appeals Council marked Dr. Powers' four-page "Physician's Residual Function Capacity Form 9" on Roland as Exhibit 17F and identified it as a medical source statement. (R. 5, 469-472). Based on the different regulations, the general rule is that "the Appeals Council must consider additional evidence offered on administrative review—after which it becomes a part of our record on judicial review—if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). The Appeals Council did not consider the "treatment notes and opinions from S.R. Reddy Katta, M.D." as "new information," because they did "not affect the

decision about whether" the claimant was disabled as of the ALJ's decision on October 28, 2010. (R. 2). The Appeals Council, however, did not make any such finding as to Dr. Powers' medical source statement. As the Commissioner concedes, the Appeals Council "considered" Dr. Powers' opinion "but determined that it did not provide a basis for changing the ALJ's decision." (Dk. 9, p. 19). By regulation, the Appeals Council considers new and material evidence being submitted if it is relevant to the period before the ALJ's decision and if so, then the Appeals Council will review the case "if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970; 416.1470. When the Appeals Council accepts and considers the new evidence, "then the question on appeal is whether the ALJ's decision was supported by substantial evidence in light of the new evidence." *Padilla v. Colvin*, 2013 WL 1908910 at *1 n.1 (10th Cir. 2013).

Other than identifying Dr. Powers' written report as an admitted medical source statement on the exhibit list, the Appeals Council makes no other specific mention of Dr. Powers or his report. In fact, the Appeals Council's decision does not mention Dr. Powers' name, does not discuss or summarize the substance of his opinion, and does not provide any evaluation of his medical opinion. The Appeals Council offers only its conclusion "that this information does not provide a basis for changing the Administrative Law

9

Judge's decision." (R. 2).

For her RFC assessment of "a limited range of light work," the ALJ relies exclusively on Dr. Parsons' RFC assessment. (R. 19-20). Dr. Parsons is a non-examining state agency medical consultant. The ALJ accepted Dr. Parsons' assessment that Roland "can sit for six hours in an eight-hour day and stand or walk for six hours in an eight-hour day." (R. 19). On the other hand, Dr. Powers assessed that Roland could sit for no more than three hours in an eight-hour day and stand or walk for no more than three hours in an eight-hour day. (R. 469). Dr. Parsons found that Roland can frequently climb stairs, balance, kneel, crouch and crawl; can occasionally stoop; and should never climb ladders. (R. 396). In contrast, Dr. Powers opined that Roland could never bend, squat, stoop, crouch, crawl, kneel, climb and reach. (R. 470). Dr. Parsons also opined there was a limitation with overhead reaching and concentrated exposure to extreme cold and vibration. (R. 397, 398). Dr. Parsons completed the RFC assessment without reviewing a medical source statement on Roland's physical capacities. (R. 400). Thus, Dr. Parsons completed the assessment without considering Dr. Powers' medical source statement. Finally, Dr. Parsons commented that the claimant chose physical therapy over surgical therapy, that Roland experienced improvement with one-month of physical therapy, and that the "[a]lleged limitations due to symptom severity are generally credible but not inconsistent with the limits of

this RFC." (R. 401).

"Medical opinions are statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Medical opinions are not to be ignored, and all such opinions are to be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(d); SSR 96–5p, West's Soc. Sec. Reporting Serv., Rulings 123–24 (Supp. 2012). A physician who treats a patient regularly over some period of time is recognized as a treating source with better insight into a patient's medical condition and with an opinion that is generally entitled to "particular weight" or "controlling weight." *Doyal v. Barnhart*, 331 F.3d 758, 762-63 (10th Cir. 2003).2 At the same time, such weight is not given an opinion based on "a fleeting relationship" or only on the claimant's desire to designate a "physician as her treating physician." *Id.* at 763. "Absent an indication that an examining physician presented 'the *only* medical evidence submitted pertaining to the relevant time period,' the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential

---

2 The regulations break down "acceptable medical sources" into three kinds: "Treating sources" provide the claimant "with medical treatment or evaluation" in "an ongoing treatment relationship." 20 C.F.R. §§ 404.1502; 416.902. "Nontreating sources" have "examined" a claimant but do "not have, or did not have, an ongoing treatment relationship." *Id.* "Nonexamining sources" have not examined a claimant but provide a medical opinion in the case. *Id.*

treatment accorded to a treating physician's opinion." *Id.* at 763 (*Reid v. Chater*, 71 F.3d 372, 374 (10th Cir.1995)). It is also the rule, however, that the opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

"An ALJ is required to 'review all of the evidence relevant to [a] claim' and 'make findings about what the evidence shows.' 20 C.F.R. §§ 404.1527(c), 416.927(c)." *Butler v. Astrue*, 410 Fed. Appx. 137, 142, 2011 WL 286368 at *5 (10th Cir. 2011). The ALJ's decision does not mention Dr. Powers' examination or treatment of Roland, and the ALJ plainly did not have or consider Dr. Powers' medical source statement that was prepared after the ALJ's decision. While Roland argues that Dr. Powers is a treating physician, neither the ALJ nor the Appeals Council evaluated or decided whether Dr. Powers meets the definition of a treating source, §§ 404.1502; 416.902. Nevertheless, the record is plain that Dr. Powers did examine Roland and, at a minimum, qualifies as a nontreating source which generally means "more weight" is given to his opinion than that of Dr. Parsons who did not examine Roland. So 20 C.F.R. §§ 404.1527(c), 416.927(c). It is required that the opinion of an examining physician be considered and that "specific, legitimate reasons for rejecting it" be given. *Doyal v. Barnhart*, 331 F.3d at 763. The Appeals Council's decision does not identify or discuss any of the relevant

factors in §§ 404.1527(c), 416.927(c) for weighing the medical opinion of Dr. Powers. There is no assessment of the treating/examining relationship, the nature and degree of support presented for the opinion, and the consistency of the opinion with the record as a whole. Dr. Powers is the only examining or possibly treating physician to have prepared a medical source statement that is part of the record. In sum, the Appeals Council provides no specific and legitimate reasons for rejecting the medical source opinion of Dr. Powers who examined and treated Roland for some period, who explained that his opinion was based on having observed a limited range of motion and increased pain with activity and based on having reviewed the findings contained in x-rays and the MRI, and who opined that Roland could stand or sit for no more than three hours which is generally consistent with Roland's physical therapy discharge that he "is able to work 4 hours w/o rest before" his symptoms start. (R. 340).

In sum, there is nothing in the decisions of the ALJ and the Appeals Council to show that Dr. Powers' opinion was evaluated following the analysis set forth above. The court is to review those decisions based solely on the reasons stated in them, and it is not free to supply or to credit rationalizations or justifications offered on a post-hoc basis. Because Dr. Powers opined that Roland's medical condition placed significant restrictions on his ability to work and because his opinion, as either a treating or examining physician, is

generally entitled to more weight than that of Dr. Parsons, the court cannot say that substantial evidence supports the ALJ's RFC assessment. Dr. Powers' opinion is new and material evidence that directly contradicts the ALJ's findings and decision. Since the Appeals Council's decision offers nothing to show that it properly evaluated this new evidence and that it did anything more than "perfunctorily adhere" to the ALJ's decision, the court must remand for a disability decision that considers Dr. Powers' opinion in conjunction with all the other evidence in the entire record. *See Flowers v. Commissioner of Social Security*, 441 Fed. Appx. 735, 745, 2011 WL 4509878 at *8 (11th Cir. 2011); *see also Harper v. Astrue*, 428 Fed. Appx. 823, 2011 WL 2580336 at *2-*3 (10th Cir. 2011).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 15th day of August, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge